```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
DOROTHY CHASEWOOD,                                :
                                                  :
                    Plaintiff,                    :      MEMORANDUM
                                                  :      & ORDER
      -against-                                   :      18-CV-623 (SMG)
                                                  :
CHRISTOPHER KAY, NEW YORK STATE                   :
DEPARTMENT OF TAXATION AND FINANCE, NEW           :
YORK CITY BUREAU OF HIGHWAY OPERATIONS,           :
and "JOHN DOE" and "JANE ROE," said names being   :
fictitious, it being the intention of Plaintiff to designate :
any and all occupants of the premises at issue herein, and :
any parties, corporations or entities, if any, having or   :
claiming an interest or lien upon the subject premises at  :
issue herein,                                     :
                                                  :
                    Defendants.                   :
------------------------------------------------------------------ x
```
GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Plaintiff Dorothy Chasewood brings this action for partition and sale of real property located at 176 West Street, Brooklyn, New York (the "property"), pursuant to Article 9 of the New York Real Property Actions and Proceedings Law ("RPAPL"). Presently before the Court is plaintiff's motion for summary judgment granting partition and sale of the property and, if required, the appointment of a referee to accomplish partition and sale and conduct an accounting with respect to proper distribution of the sale proceeds. For the reasons and to the extent described below, plaintiff's motion for summary judgment is granted.

## FACTS

A. *Plaintiff's Version*

The following facts are drawn from plaintiff's statement filed in accordance with Rule 56.1 of the Local Rules of the United States District Court for the Eastern District of New York. *See* Pl.'s Statement of Uncontested Facts ("Pl.'s 56.1"), Dkt. 36-1. Where defendant's Rule 56.1 statement controverts a fact put forth in plaintiff's Rule 56.1 statement, that dispute is noted below. *See* Def. Christopher Kay's Statement Controverting Pl.'s Rule 56.1 Statement and Statement of Additional Material Facts Pursuant to Rule 56.1 ("Def.'s 56.1"), Dkt. 38-4.

Plaintiff and defendant are tenants in common of the property by deed dated October 17, 2016. Pl.'s 56.1 ¶ 1; Bargain and Sale Deed, Pl.'s Ex. 3 ("Deed"), Dkt. 36-5. The Deed lists 176 West Street Corp. as grantor and plaintiff and defendant as grantees. Pl.'s 56.1 ¶ 2; Deed at 1.[1] Plaintiff and defendant were married in 2000 and divorced in 2009. Pl.'s 56.1 ¶ 4; Final J. Dissolving Marriage, Pl.'s Ex. 2 ("Divorce Judgment"), Dkt. 36-4.[2] The parties entered into a

---

[1] Defendant disputes this fact only to the extent of contending that he was not the sole shareholder of 176 West Corp., despite the Deed's indication to the contrary. Def.'s 56.1 ¶ 2.

[2] The Divorce Judgment is one of several exhibits that defendant contends are inadmissible and should not be considered in support of plaintiff's motion for summary judgment. Def.'s Mem. at 8–10, Dkt. 38. In particular, defendant challenges the admissibility of "Exhibit[] '2' and Exhibits '4' through '9[,]' . . . [which] are documents that were purportedly generated in connection with the Florida divorce proceeding," as well as the admissibility of "certain tax documents [attached] to her [plaintiff's] declaration as Exhibit '10.'" *Id.* at 8. Defendant contends that plaintiff has failed to authenticate these documents pursuant to Rule 901 of the Federal Rules of Evidence and that they are not self-authenticating pursuant to Rule 902. *Id.* at 8–10. Defendant does not, though, affirmatively contest the authenticity of the documents. Absent a genuine challenge to authenticity, a failure to proffer evidence establishing that a document is authentic does not preclude a court from considering the document when deciding a motion for summary judgment. *See Daniel v. UnumProvident Corp.*, 261 F. App'x 316, 319 (2d Cir. 2008) (summary order) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party." (citing *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454 (2d Cir. 1991))); *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 202 (S.D.N.Y. 2017) ("Defendant's argument about improper authentication is not compelling, as Defendant does not challenge the authenticity of the document, but only its admissibility." (citing *Long v. New York City*, 2016 WL 4203545, at *2 n.4 (S.D.N.Y. Aug. 8, 2016))); *Hines v. City of Albany*, 2011 WL 2620381, at *2 n.5 (N.D.N.Y. July 1, 2011) ("[O]n a motion for summary judgment, a party is not required to authenticate documents, where . . . authenticity is not challenged by the other party." (citing *United States v. Painting Known as Hannibal*, 2010 WL 2102484, at *1 n.2 (S.D.N.Y. May 18, 2010)))

"Separation and Settlement Agreement" that the Divorce Judgment approved and incorporated by reference. Divorce Judgment ¶ 6. The Agreement and Divorce Judgment provide that plaintiff and defendant are each entitled to a 50% interest in 176 West Street Corp., which was at that time the owner of the property. Pl.'s 56.1 ¶¶ 5–6; Divorce Judgment, Separation and Settlement Agreement at 24.[3]

Plaintiff contends that, despite this provision in the Separation and Settlement agreement, defendant refused to transfer a 50% interest in 176 West Street Corp. to her. Pl.'s 56.1 ¶ 7. Plaintiff thereafter brought an enforcement proceeding in Florida against defendant. *Id.* ¶ 8. That proceeding resulted in a stipulation and order effectively dissolving 176 West Street Corp. as of October 26, 2011, by which time defendant still had not transferred any interest in the corporation to plaintiff. *Id*. ¶¶ 9–12; Stipulated Order dated July 9, 2014, Pl.'s Ex. 5, Dkt. 36-7; R. & R. dated Jan. 6, 2015, Pl.'s Ex. 6, Dkt. 36-8; Order dated Feb. 26, 2016, Pl.'s Ex. 7, Dkt. 36-9; Order dated Feb. 17, 2017, Pl.'s Ex. 8, Dkt. 36-10; Order dated July 19, 2017, Pl.'s Ex. 9, Dkt. 36-11; NYS Division of Corporations Entity Information, Pl.'s Ex. 11, Dkt. 36-13.[4]

Although defendant failed to convey to plaintiff a 50% interest in 176 West Street Corp. prior to its dissolution, on February 26, 2016, he did, pursuant to a court order, convey to plaintiff a 50% interest in the property that the corporation had previously held. Pl.'s 56.1 ¶ 13; Order dated Feb. 26, 2016. However, while defendant signed the Deed, he did not execute New York State and New York City transfer tax returns and other documents required before the

---

[3] Defendant contests this fact only to the extent that he claims plaintiff was a shareholder of 176 West Street Corp. prior to entry of the Divorce Judgment. Def.'s 56.1 ¶ 5. Also, as plaintiff notes, the Divorce Judgment refers to the company as 176 West Street, LLC but was later amended to reflect the company's actual name, 176 West Street Corp. Pl.'s 56.1 ¶ 6; Magistrate's Omnibus R. & R., Pl.'s Ex. 4, Dkt. 36-6. Again, defendant does not contest this fact other than to say plaintiff was a shareholder prior to entry of the Divorce Judgment. Def.'s 56.1 ¶ 6.

[4] Defendant generally controverts these factual contentions, again, on the ground that plaintiff was a 50% shareholder in 176 West Street Corp. prior and subsequent to the Divorce Judgment. Def.'s 56.1 ¶¶ 7–12.

3

Deed could be filed in New York State; plaintiff was accordingly required to return to the Florida Court to obtain permission to sign the documents necessary for filing the Deed, and finally did so on July 19, 2017. Pl.'s 56.1 ¶¶ 14–16.[5]

B. *Defendant's Version*

Defendant submits additional facts in his Rule 56.1 Statement that he contends present genuine issues to be tried.[6] Plaintiff generally claims that she has insufficient knowledge or information to confirm or deny defendant's factual contentions, but any instance where plaintiff specifically denies a factual assertion made by defendant is noted below.

Defendant states that he paid the full purchase price of the property—$264,000—in June of 2000. Def.'s 56.1 Suppl. ¶ 1. According to defendant, the property consists of four apartment units; defendant resides in one of the units and operates his business out of the property as well. *Id.* ¶¶ 2, 32–33. As of January of 2006, the property, then solely owned by 176 West Street Corp., required extensive renovations. *Id.* ¶¶ 3–4.[7] Defendant intended to fund the renovations with a construction bond but learned he could not obtain one on behalf of a single-shareholder corporation. *Id.* ¶¶ 5–7. Defendant therefore prepared and delivered a Share Certificate to plaintiff for the purpose of transferring a 50% interest in 176 West Street Corp. to her. *Id.* ¶¶ 8–11; Aff. of Christopher A. Gorman, Esq. in Opp'n to Def.'s Mot. for Summ. J. and Related

---

[5] Defendant attributes his refusal to sign certain documents to his being required to attest, under penalty of perjury, to certain facts not within his knowledge; defendant states that he ultimately signed the documents after the additional Florida court proceedings confirmed the accuracy of such facts. Def.'s 56.1 ¶¶ 14–16.

[6] These additional facts are provided within defendant's Rule 56.1 statement in numbered paragraphs one through thirty-five. To avoid confusing these paragraphs of defendant's Rule 56.1 statement with those that are responsive to plaintiff's Rule 56.1 statement, I refer to this portion of defendant's statement as "Def.'s 56.1 Suppl."

[7] Plaintiff notes that in prior state court proceedings, she has denied that 176 West Street Corp. was the sole owner of the property as of January of 2006. Pl.'s Statement Controverting Def.'s Statement of Additional Material Facts Pursuant to Rule 56.1 ("Pl.'s 56.1 Reply") ¶ 3, Dkt. 39-1.

4

Relief ("Gorman Aff."), Ex. 2 ("Share Certificate"), Dkt. 38-6.[8] Defendant submits a letter of plaintiff, transmitted through her counsel to defendant's former counsel on or about June 25, 2013, claiming that plaintiff was at that time a 50% shareholder of 176 West Street Corp. and demanding to see the company's books and records. Def.'s 56.1 Suppl. ¶ 17; Gorman Aff., Ex. 1 ("June 25 Letter").[9] Defendant indicates that plaintiff has not renounced or corrected any statement reflecting her interest as a shareholder made in the June 25 Letter. Def.'s 56.1 Suppl. ¶ 18.[10]

After obtaining a construction bond, defendant financed the renovations without any contribution from plaintiff. *Id.* ¶¶ 12–13, 28.[11] Nor, according to defendant, has plaintiff made any contribution towards payment of the mortgage secured by the property, insurance expenses, utility expenses, taxes, maintenance and repair costs, or other carrying costs, other than by purchasing a few cans of paint on one occasion, despite an oral agreement to split costs evenly with defendant. *Id.* ¶¶ 19–20, 22–27.[12]

---

[8] Plaintiff disputes defendant's statement that defendant told plaintiff of his plan to make her a 50% shareholder and that defendant agreed to transfer half of 176 West Street Corp.'s shares to her. Pl.'s 56.1 Reply ¶¶ 8–9. Plaintiff agrees only that a Share Certificate exists; she claims to lack knowledge or information sufficient to attest to its authenticity and notes that she has previously denied that defendant prepared a Share Certificate and delivered it to her. Pl.'s 56.1 Reply ¶¶ 10–11.

[9] Plaintiff agrees with this statement only to the extent "that such attorney letter exists," but disputes the remainder of the statement. Pl.'s 56.1 Reply ¶ 17. To the contrary, plaintiff asserts that she was never a shareholder of 176 West Street Corp despite defendant's obligation to transfer a one-half interest in the corporation to her under the terms of the Divorce Judgment. Pl.'s 56.1 ¶¶ 9–10

[10] Plaintiff disputes this on the ground that the present litigation is itself a renunciation of the statements contained in the letter defendant attributes to plaintiff. Pl.'s 56.1 Reply ¶ 18.

[11] Plaintiff agrees that she did not pay for any of the renovations. Pl.'s 56.1 Reply ¶ 13.

[12] Plaintiff states that she has previously denied that her only financial contribution to the property was a few cans of paint. Pl.'s 56.1 Reply ¶¶ 19–20, 22–25, 27. Plaintiff also denies having made any oral agreement with respect to the payment of expenses related to the property. Pl.'s 56.1 Reply ¶ 26.

Defendant claims he paid off the mortgage in full on August 11, 2015. *Id.* ¶ 21.
Defendant also contends that plaintiff interfered with his access to the property and efforts to show the property to prospective investors and tenants, and "consistently acted in a way towards [defendant] which could be described as 'acting in bad faith, being harassing and oppressive.'" *Id.* ¶¶ 14–16.[13]

Defendant states that the property has been appraised at a value of $3,000,000 as of July 26, 2018. *Id.* ¶ 29.[14] Defendant attributes much of the value of the property to the renovations and repairs he funded and oversaw. *Id.* ¶ 30. Defendant also opines that the building's apartments could be converted into separate condominium units and that doing so would substantially increase the property's value. *Id.* ¶¶ 34–35.[15]

## DISCUSSION

### I. Legal Standards

#### A. Summary Judgment

A court may grant summary judgment if the moving party shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). "In deciding whether there is a genuine issue of material fact as to an element essential to

---

[13] Plaintiff notes having previously denied these statements. Pl.'s 56.1 Reply ¶¶ 14–16.

[14] Defendant refers the Court to Exhibit 12 of plaintiff's motion papers, but the appraisal does not appear to be appended there or anywhere else within either party's motion papers. The Court credits defendant's recitation in any event, as plaintiff affirmatively agrees with it. Pl.'s 56.1 Reply ¶ 29.

[15] Plaintiff responds that defendant's contention that the conversion would increase the property's value is speculative. Pl.'s 56.1 Reply ¶ 35.

a party's case, the court must examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (internal quotation marks and citation omitted).

On the other hand, "[t]o survive summary judgment . . . the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Reiseck v. Universal Commc'ns of Miami*, 2012 WL 3642375, at *2 (S.D.N.Y. Aug. 23, 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986)). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

### B. Partition and Sale

"A person holding and in possession of real property as . . . tenant in common . . . may maintain an action for partition of the property, and for a sale if it appears that a partition cannot be made without great prejudice to the owners." RPAPL § 901(1). A court overseeing a partition action will enter an "interlocutory judgment," which (1) "shall determine the right, share or interest of each party in the property, as far as the same has been ascertained"; (2) "[w]here the property . . . is so circumstanced that a partition thereof cannot be made without great prejudice to the owners[,] . . . shall direct that the property . . . be sold at public auction"; and (3) when the judgment is in favor of the plaintiff, "shall direct that partition be made between the parties according to their respective rights, shares and interests." RPAPL § 915.

"The tenant seeking the partition need not be in actual possession of the property to bring such an action, but instead need only have a right to possession of the property pursuant to the property's title." *Melnick v. Press*, 809 F. Supp. 2d 43, 58 (E.D.N.Y. 2011). Nonetheless, "[t]he

7

right to partition is not absolute, . . . and while a tenant in common has the right to maintain an action for partition pursuant to RPAPL 901, the remedy is always subject to the equities between the parties." *Tsoukas v. Tsoukas*, 107 A.D.3d 879, 880 (2d Dep't 2013). Accordingly, "the statutory right of partition . . . may be precluded by the equities presented in a given case." *Ferguson v. McLoughlin*, 184 A.D.2d 294, 294 (1st Dep't 1992).

A plaintiff tenant in common seeking summary judgment on partition is typically required to make a prima facie showing of his or her ownership and right to possession. *See Fini v. Marini*, 164 A.D.3d 1218, 1221 (2d Dep't 2018) ("A plaintiff establishes his or her right to summary judgment on a cause of action for partition and sale by demonstrating ownership and right to possession of the property."); *Cadle Co. v. Calcador*, 85 A.D.3d 700, 702 (2d Dep't 2011) (same); *Manganiello v. Lipman*, 74 A.D.3d 667, 668 (1st Dep't 2010) (finding that "[d]efendant, by merely averring that plaintiff never contributed to the purchase of the premises, that she has solely contributed to the property's maintenance and upkeep since defendant's departure from the same, and that she has continuously occupied the condominium since that time, failed to controvert plaintiff's ownership interest"). A defendant, however, may defeat the motion by raising a triable issue of fact as to whether the equities favor partition. *See Arata v. Behling*, 57 A.D.3d 925, 926 (2d Dep't 2008) (affirming denial of summary judgment where, although plaintiff met his prima facie burden, "the defendant raised triable issues of fact as to whether the equities favor her position").

C. *Accounting*

"A partition action, although statutory, is equitable in nature and an accounting of the income and expenses of the property sought to be partitioned is a necessary incident thereof." *Melnick*, 809 F.Supp.2d at 58 (internal quotation marks and citation omitted). Generally, an

accounting "should be had as a matter of right before entry of the interlocutory or final judgment and before any division of money between the parties." *Gapihan v. Hemmings*, 121 A.D.3d 1397, 1399 (3d Dep't 2014) (quoting *McVicker v. Sarma*, 163 A.D.2d 721, 722 (3d Dep't 1990)).

New York common law with respect to the timing of an accounting relative to the granting of partition is somewhat unclear, though, and it appears that whether an accounting must be held prior to the entry of an interlocutory judgment is a matter within the discretion of the trial court. *Compare Gapihan*, 121 A.D.3d at 1399 (providing that the accounting should occur prior to entry of the interlocutory or final judgment), *and Goldberger v. Rudnicki*, 94 A.D.3d 1048, 1050 (2d Dep't 2012) (holding that although plaintiff "established his prima facie entitlement to judgment as a matter of law by demonstrating his ownership and right to possession . . . and by showing that a physical partition would lead to great prejudice," the parties' "disagreements as to their respective interests, rights, and share" in the property must be determined prior to entry of an interlocutory judgment of partition), *with McCormick v. Pickert*, 51 A.D.3d 1109, 1110–11 (3d Dep't 2008) (acknowledging the general rule that an accounting "should be had as a matter of right before entry of the interlocutory or final judgment and before any division of money between the parties" (quoting *Wong v. Chi-Kay Cheung*, 46 A.D.3d 1322, 1322 (3d Dep't 2007)), but nonetheless finding that because plaintiffs asserted that unnecessary ongoing maintenance expenses would be incurred if a sale were deferred, and because defendant would not be prejudiced, the trial court did not abuse its discretion in directing that a sale take place and that the proceeds be held in escrow until an accounting was completed), *and Donlon v. Diamico*, 33 A.D.3d 841, 842 (2d Dep't 2008) (affirming the trial court's grant of summary judgment to plaintiff on her partition cause of action, but modifying the order to provide that

9

"[p]rior to the entry of an interlocutory judgment directing the sale of the subject property, an accounting must be made of the income and expenses of the property").

## II. Analysis

### A. Plaintiff's Prima Facie Case of Entitlement to Partition and Sale of the Property

#### i. Plaintiff's Ownership and Right to Possession

Plaintiff submits the Deed to establish her ownership of the property as a tenant in common with a right to possession, and thus makes out a case for partition. The Deed is a "Bargain and Sale Deed," dated October 17, 2016, by which 176 West Street Corp., as grantor, conveys the property to plaintiff and defendant "as tenants in common." Deed at 1. Defendant does not contest the validity or admissibility of the Deed, nor does he contend on any other ground that plaintiff and defendant do not own the property as tenants in common. There is accordingly no dispute of fact with respect to whether these two elements—plaintiff's ownership and right to possession of the property—are established.

#### ii. The Availability of Actual Partition Rather Than Sale

As to whether physical partition could be accomplished without great prejudice to the parties, plaintiff asserts that "[t]he Property . . . must be partitioned and sold because it is residential in nature . . . and contains a structure that cannot be physically divided without great prejudice to the owners." Pl.'s Mem. at 4. Defendant contends that physical partition can be had without great prejudice to the owners by converting the property into four condominium units, with plaintiff and defendant each owning two units. Def.'s Mem. at 19–21. Plaintiff argues that going through the process of conversion would itself be prejudicial because she would have to work together with defendant in coming to a negotiated agreement regarding the contents of a condominium declaration under section 339-n of the New York Real Property Law ("RPL") and

by-laws under RPL § 339-v, compiling a book of accounts and financial statements under RPL § 339-w, and overseeing repairs in accordance with RPL § 339-cc. Pl.'s Mem. at 6. Plaintiff also expresses concern about exposure to liability as a sponsor or board member of the contemplated condominium. *Id.*

Although it may be possible to convert the property into four distinct condominium units, it is clear from the undisputed facts that forcing plaintiff to participate with defendant in the conversion process, and requiring her to continue to interact with him once each owned two of the four converted units within the same building, would cause plaintiff great prejudice. As discussed above, defendant—at least from plaintiff's perspective—failed to comply with the provision of the Separation and Settlement Agreement calling upon him to transfer a 50% interest in 176 West Street Corp. to plaintiff, leading to further litigation between the parties even after their divorce was final. Yet another application to the Court was triggered when defendant, even after signing the Deed, refused to sign additional documents required to transfer ownership of the property.

One incident in particular illustrates the level of animosity between the parties. It is undisputed that plaintiff was placed under arrest by police officers at the property on June 1, 2013 and detained over a weekend based upon a complaint made by the defendant. Decl. of Dorothy Chasewood in Supp. of Mot. for Summ. J. ("Chasewood Decl.") ¶ 6, Dkt. 36-15; Aff. of Christopher Kay ("Kay Aff.") ¶ 22, Dkt. 38-2. The parties do not agree about all of the underlying circumstances. Plaintiff contends that "[she] was arrested at the Property and jailed for the weekend, upon Kay's complaint, who claimed that [she] was trespassing at the Property." Chasewood Decl. ¶ 6. While defendant disputes this assertion, he does so only with respect to the grounds for plaintiff's arrest: "While Dorothy contends that I had her arrested at the Property

11

and jailed for the weekend at that time purportedly for 'trespassing,' that is false—in fact, the reason why Dorothy was arrested by the police in June 2013 in the vicinity of the Property is because she was interfering with the business of the Company, of which she was a shareholder, by seeking to preclude a prospective tenant for the Property . . . from entering into a tenancy at the Property." Kay. Aff. ¶ 22. Whether plaintiff was arrested for trespassing or some other offense is immaterial, though; the episode makes plain that it would be unfairly prejudicial to plaintiff if she and defendant were compelled to maintain a relationship as owners of separate condominium units located in the same building.

In contrast, defendant could easily minimize the prejudice he claims he would suffer if the property were partitioned and sold simply by purchasing the property outright. Defendant does not contend that he lacks the resources to acquire the property himself. Were he to purchase the property, defendant could continue to reside and operate his business there.[16] Moreover, if defendant were the property's sole owner, he would face no impediment to his plan to convert the property to condominium units and could himself reap all of the substantial profit he anticipates would ensue as a result of the conversion.

Defendant invokes *Perretta v. Perretta*, 2014 WL 2592628 (Sup. Ct., Kings Cty. June 10, 2014), *aff'd*, 143 A.D.3d 878 (2d Dep't 2016), for the proposition that, because a manner of partition—conversion into condominium units—is available, it would not be appropriate under RPAPL § 901(1) to require the sale of the property. Def.'s Mem. at 20–21. In *Perretta*, plaintiffs did not live in the subject premises, a four-family brownstone they owned as tenants in common

---

[16] As noted above, defendant asserts that he both resides and operates his business at the property. Whether and to what extent defendant in fact lives at the property is not entirely clear. Plaintiff has submitted an excerpt of defendant's deposition. Letter of David H. Green, Esq. dated Aug. 7, 2019 ("Green Letter"), Dkt. 50; Dep. of Christopher Kay ("Kay Dep."), Dkt. 50-1. At his deposition, defendant stated that his address was 191 Gun Club Road, Millerton, New York and confirmed that this address is for a residential property where he has lived for ten to fifteen years, but also indicated that 176 West Street is his primary residence. Kay Dep. 4:10–12, 5:19–6:5. At a minimum, this testimony indicates that defendant would have a place to live even if the property were sold.

12

with one of the defendants, who did live in one of the units. 2014 WL 2592628, at *1. The trial court granted plaintiffs' summary judgment motion to the extent of determining that partition was appropriate, but denied summary judgment with respect to sale of the partitioned property. The trial court found that "[t]he subject property, a four-family building, could be converted into separate condominium units," and pointed to defendants' contention that conversion would both increase the property's value and allow them to remain in the unit in which they resided. *Id.* at *3. The trial court noted that "actual physical partition of property is the preferred method and is presumed appropriate unless one party demonstrates that actual physical partition would cause great prejudice." *Id.* (quoting *Lauriello v. Gallotta*, 70 A.D.3d 1009, 1010 (2d Dep't 2010)). The trial court left it to the referee to determine whether partition could be accomplished without great prejudice, and the Appellate Division affirmed, holding that "there is a question of fact as to whether physical partition or sale of the subject property is appropriate." *Perretta*, 143 A.D.3d at 879.

*Perretta* is factually distinct; there is no indication in either the trial court decision or appellate opinion that the relationship between plaintiffs and defendants was so toxic that it would have caused them great prejudice if they were required to interact as joint owners of the brownstone. The motion before this Court, however, is made by an ex-wife against her ex-husband, whose complaint to the police triggered her arrest and detention.

Defendant purports to raise "a litany of triable issues of fact that the equities here are not in Plaintiff's favor as a result of Plaintiff's misconduct vis-à-vis the Property." Def.'s Mem. at 15 (footnote omitted). None of these alleged disputed facts, however, demonstrate there is a genuine issue as to whether partition and sale is appropriate.

13

First, defendant suggests that his payment of the entire purchase price for the property in June of 2000 weighs in his favor. *Id.* at 16. However, as the Court noted during oral argument, it is reasonable to presume that the tribunal presiding over the parties' divorce, which established the equal-shares tenancy in common in the first instance, took this factor into account in rendering a decision as to the equities between the parties. *See* Tr. at 9:8–22. Accordingly, that defendant may have paid the purchase price for the property is not properly before the Court on this motion, and is likely to be irrelevant to any accounting. Indeed, it appears that "this Court is without jurisdiction to review the adequacy of a distributive award made in a divorce proceeding." *In re Chester A. Ciancarelli*, No. 96-3931, slip op. at 25 (E.D.N.Y. Dec. 16, 1997)*; see also Hamilton v. Hamilton-Grinols*, 363 F. App'x 767, 769 (2d Cir. 2010) (encouraging federal courts to "abstain from exercising jurisdiction over cases 'on the verge' of being matrimonial in nature" (internal citation omitted)).

Defendant next contends that plaintiff and defendant, as of January 2006, became 50% owners of the property when defendant transferred a 50% ownership interest in the company that then owned the property to plaintiff, Def.'s Mem. at 16, n.4, and that plaintiff acknowledged her ownership in the company on multiple occasions, *id.* at 16–17. Plaintiff, though, contends in her motion papers that she "was never a shareholder, owner, or had any interest in 176 West Street Corp. (the prior owner of the Property)." Pl.'s Mem. at 1. These factual disputes are immaterial with respect to whether a sale of the property is appropriate. As defendant himself notes, "[a]ll that this argument [of plaintiff's] relates to is when—not whether—Plaintiff acquired her interest in the Property," Def.'s Mem. at 16 n.4, and it may be properly considered in the accounting proceeding, but not on plaintiff's motion for summary judgment as to whether a sale is warranted.

The same conclusion applies to the remainder of the factual issues raised by defendant. Defendant asserts that "[w]ith the exception of a few cans of paint on a single occasion, Plaintiff has never paid a single expense attributable to the Property," that "Defendant . . . has been 'carrying' the Property and all of the expenses . . . entirely on his own from at least January 2006," that "Defendant paid the outstanding balance of the mortgage secured by the Property in full on or about August 11, 2015 after Plaintiff allowed the mortgage to go into default," and that "Defendant, on his own, has overseen a massive renovation of the Property . . . which has added substantial value to the Property without any input or contribution . . . from Plaintiff." *Id.* at 17. Each of these assertions pertain to what the amount of each party's share or interest in the proceeds of a sale of the property should be, and not to whether plaintiff is entitled to have the property sold rather than physically partitioned.

### B. Timing of Accounting

As discussed above, New York courts generally hold that an accounting should be conducted prior to entry of an order directing the sale of property. However, appellate courts reviewing decisions regarding the timing of an accounting appear to hold that it is within the trial court's discretion to alter the timing where a different approach would be more equitable. For instance, in *Donlon*, the trial court granted the plaintiff summary judgment on partition and directed that the property be sold. 33 A.D.3d at 842. The Appellate Division modified the order of the trial court by adding a paragraph "directing that an accounting be made prior to the entry of an interlocutory judgment directing the sale of the subject premises." *Id.* In so doing, the Appellate Division did not reverse the trial court's decision to grant summary judgment with respect to whether partition and sale was proper, but rather upheld the grant of summary

15

judgment while modifying the order to provide for an accounting prior to the court-ordered sale of the property.

*McCormick* presents yet another approach: there, the trial court "granted plaintiffs' . . . motion for summary judgment, appointed a referee to conduct a sale, denied defendant's cross motion for an accounting prior to the sale, and directed that the proceeds from the sale be placed in escrow until an accounting could be conducted." 51 A.D.3d at 1110. The defendant in *McCormick* based her appeal on "the rule that 'an accounting is a necessary incident of a partition action and "should be had as a matter of right before entry of the interlocutory or final judgment and before any division of money between the parties."'" *Id.* (quoting *Wong*, 46 A.D.3d at 1323). It was sufficient for the Appellate Division, however, that "[p]laintiffs . . . assert[ed] that they will incur unnecessary expense in maintaining the premises if sale is delayed during discovery in connection with the accounting" and that "defendant failed to demonstrate that she will suffer any prejudice as a result of the funds from the sale being held in escrow pending an accounting." *Id.*

Directing a sale prior to an accounting and holding the proceeds in escrow would not be as appropriate here as it was on the facts at issue in *McCormick*. There, the *plaintiff* was the one both seeking partition and sale *and* paying for the carrying costs of the property. Here, though, the hardships plaintiff presents to the court are emotional in nature rather than financial. It is *defendant* who is paying the carrying costs of the property, and it is defendant who seeks an accounting before any sale of the property takes place. Moreover, as discussed above, this Court's decision that the equities call for sale rather than physical partition rests in part on defendant's ability to purchase plaintiff's share of the property. Before deciding whether to take that step, defendant would undoubtedly benefit from knowing the results of an accounting.

## CONCLUSION

For the reasons discussed above, plaintiff's motion for summary judgment is granted to the extent that the property shall be partitioned and sold. However, there will be an accounting of the parties' respective interests in the property and their rights to the proceeds of the sale prior to entry of an order directing that the sale take place.

The Court will hold a telephone conference at 4:00 p.m. on January 23, 2020 to schedule further proceedings. Counsel for plaintiff will arrange the conference call.

SO ORDERED.

_____
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
January 6, 2020

*U:\#JEF 2018-2019\Chasewood v. Kay, 18-cv-623\Chasewood SJ Order FINAL 010620 .docx*